DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**HIREN SHAH** and **PIYUSH SHAH,** derivatively on behalf of
nominal Defendants **DEERFIELD HOTEL ONE, LLC,** and
**DEERFIELD HOTEL TWO, LLC,**
Appellants,

v.

**SANJAY V. PATEL** and **UMESH PATEL,**
Appellees.

No. 4D2024-1321

[August 20, 2025]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit,
Broward County; Jack Tuter, Judge; L.T. Case No. CACE21019948.

Jack J. Aiello of Gunster, Yoakley & Stewart, P.A., West Palm Beach,
and Steven Ellison of Nelson Mullins Riley & Scarborough LLP, West Palm
Beach, for appellants.

Keith T. Grumer of Grumer Law, P.A., Weston, for appellees.

FORST, J.

This appeal arises out of a dispute surrounding two limited liability
companies that the appellants, Hiren and Piyush Shah ("the Shahs"), and
the appellees, Dr. Umesh Patel ("Umesh") and Sanjay Patel ("Sanjay"),
formed to renovate, operate, and manage two hotels. The Shahs filed a
derivative suit contending that Umesh and Sanjay had breached their
fiduciary duties to the LLCs when each served as sole manager.
Specifically, the Shahs contended that: (1) while Umesh was manager,
Sanjay had loaned monies from the LLCs to Sanjay's wife and entities in
which Sanjay held a financial interest; and (2) when Sanjay became sole
manager, Sanjay had created a backdated "Management Agreement,"
forged Umesh's signature,[1] and then used the Management Agreement to
convert the loans into past management compensation for Sanjay, and

---

[1] Although Sanjay was the LLCs' manager when the Management Agreement was
created, it was backdated to 2013, when Umesh was manager.

obligated the LLCs to pay Sanjay an ongoing management fee at a rate which the Shahs had not approved.

The case proceeded to a bench trial. The trial court granted Umesh's involuntary dismissal motion, reasoning the Shahs knew Umesh—a practicing physician—was involved solely due to his financial creditworthiness, and instead Sanjay was the experienced hotelier who managed the hotels, even when Umesh was the manager "in name," and effectuated the at-issue fund transfers.

After considering the evidence and testimony with respect to Sanjay's actions, the trial court found "[t]he Deerfield Hotels never paid Sanjay a management fee under the Management Agreement" and the Shahs were "never in the dark" about the hotels' operations and finances. The trial court concluded Sanjay's forgery of Umesh's name to the Management Agreement breached Sanjay's fiduciary duty, but no competent substantial evidence established causation and damages to the LLCs. The trial court specified that the "only evidence" of damages were loans about which the Shahs had known and which two financial witnesses testified had been "zeroed out."

We affirm the trial court's involuntary dismissal of the Shahs' claims against Umesh without discussion. However, we reverse the final judgment in Sanjay's favor because several factual findings were not supported by competent substantial evidence. Accordingly, we remand for the trial court to calculate damages caused by Sanjay's fraudulent creation of the Management Agreement that he had used to reduce and offset loans and accrue management fees at a rate which the Shahs had not approved.

## Background

The Shahs are brothers, financial consultants, and hotel investors. They had a long history with Sanjay, who had been a hotel industry professional for nearly thirty years. On three occasions before the LLCs at issue herein were formed, Hiren Shah had assisted Sanjay with loan acquisition and refinancing for Sanjay's other properties.

The LLCs—Deerfield One and Deerfield Two—were created in 2013, but unlike Deerfield One, which began operations immediately, Deerfield Two did not conduct business operations until 2019. From 2013 until early 2019, Umesh was Deerfield One's named manager. From early 2019 onwards, Sanjay became the named manager of both Deerfield One and Deerfield Two. The Shahs were minority members. Beginning in 2019,

Umesh[2] was given the authority to make decisions without the Shahs' consent. Umesh is a practicing physician, and both parties agree he was included in the LLCs and named as "manager" only because of his strong financial status. The parties understood *before* the LLCs were created that Umesh would have no role in the hotels' operations or management, and they had no reasonable expectation that he would have any oversight of these aspects.

*Loan History*

Over an approximate four-year period (2013-17), Sanjay directed Deerfield One to loan monies to the following entities/individuals: (1) $347,041.83 to Akash Hotels ("Akash"); (2) $59,446.34 to Jericho Hotels ("Jericho"); (3) $1,138,913.48 to Freeport Marina Hotels ("Freeport"); and (4) $112,250 to Sanjay's wife Aditi ("Aditi"). These loan amounts were reported on Deerfield One's 2018 general ledger, balance sheet, and the tax returns. Deerfield One loaned an additional $391,500 to Aditi in 2019, and the 2019 general ledger reflected that the loan balance to Aditi was $503,750. The loan balances for Akash, Jericho, and Freeport remained at $347,041.83, $59,446.34, and $1,138,913.48, respectively at year-end 2019. The testifying bookkeeper ("Bookkeeper") explained Sanjay had directed her to record the loans within the LLCs' financial records. Hiren Shah testified he was aware Sanjay had loaned Deerfield One funds to these other entities, but Sanjay "always said the loans would be repaid back to Deerfield."

After most of the loan monies had been disbursed, the Akash loan was reduced by $200,000 and offset by a management fee to Sanjay. Specifically, the LLCs' accountant ("Accountant") sent the following email to Bookkeeper, Sanjay, and Hiren Shah: "I reduced the assets due from [Akash] by $200,000 and picked up a management fee (income to Sanjay Patel). Hence the receivable went down by $200,000 and we now have a $200,000 management fee on the P & L (recorded as an expense)."

*The Management Agreement*

Shortly before Accountant sent this loan reduction email, Sanjay had approached the Shahs with a proposal that the LLCs pay Sanjay $75,000 per year compensation to manage the two hotels. No formal agreement concerning this $75,000 annual compensation materialized, but Hiren testified, "[w]hen [Sanjay] asked for a salary we said, okay, you want $75,000 salary, okay."

---

[2] Umesh is Sanjay's brother-in-law.

In the following year, 2019, Sanjay created and forged Umesh's name to the Management Agreement, which lacked an execution date, but indicated it was "made and entered into as of June 23[], 2013." The Management Agreement was between Deerfield One and Sanjay as "manager," specifying, "Owner[3] shall pay Manager, as compensation for its services, a Management Fee an amount equal to four percent (4%) of the Gross Revenue of the hotel . . . but in no event less than $4,000 per/month for each Fiscal Year or portion therefore during the term of this Agreement (the 'Management Fee')."

Hiren testified that, although a four percent management fee is standard in the hotel industry, he would have objected to Sanjay receiving four percent because Deerfield One had separately paid expenses typically included within the management fee. According to Hiren, the Shahs had never discussed the Management Agreement with Sanjay or Umesh, which conflicted with Sanjay's testimony that the Shahs had verbally agreed to a four percent rate.[4] The parties agree that no similar management agreement, forged or otherwise, existed between Deerfield Two and Sanjay.

*Loan Reduction*

The exact timing is unclear, but at some point after Sanjay had created and forged Umesh's signature on the Management Agreement, the referenced loans were completely zeroed out or substantially reduced. Specifically, the admitted 2020 general ledger indicated that Akash, Jericho, and Aditi had a "$0.00" balance. Bookkeeper testified that Sanjay directed her to reverse the loans by an "applied management fee," and Bookkeeper confirmed the loan reduction amount was $910,238. This $910,238 represented the outstanding loans to Akash ($347,041.83), Jericho ($59,446.34), and Aditi ($503,750).[5] The 2019 filed tax return reflected "0" as the ending balance for these loans under "other current assets," and then these loans disappeared from subsequently filed Deerfield One tax returns. Although Hiren had reviewed earlier tax returns listing these loans as assets, he did not receive the 2019 or subsequently-

---

[3] The Management Agreement reflected Umesh "signed" as "Owner" and "managing member/president" of Deerfield One.

[4] During oral argument, the Shahs' counsel acknowledged "the [Shahs] agreed at trial that [Sanjay] should be entitled to something," but counsel argued Sanjay had improperly handled the management fees issue.

[5] The sum is $910,238.17, but the parties used the rounded figure of $910,238 when referencing the zeroed-out amount.

4

filed tax returns. Hiren testified that, in 2019, he began suspecting Sanjay was reclassifying loans and "not going to pay the loans back."

Additionally, the financial records reflected the Freeport loan had received a roughly $400,000 reduction from $1,138,913.48 to $738,913.00. Whether $400,000 remained due to Deerfield One was contested at trial. A certified public accountant testified on the Shahs' behalf, declaring that she could not find a $400,000 adjustment and had "no idea why it was written off." Bookkeeper confirmed the financial records reflected $1,138,913.48 had been transferred to Freeport, but she could not recall why Freeport had received a $400,000 reduction. Bookkeeper conceded the $400,000 reduction adjustment could not be verified by the financial documents admitted into evidence. Sanjay contended the transfer to Freeport had been originally overstated when it was recorded as $1,138,913.48, and the Freeport loan had been only $738,000 for which, both parties agree, Sanjay later reimbursed the LLCs.

The certified public accountant who testified for the Shahs quantified "the money that left the company that has not been repaid" as $1,310,239 (rounded), broken down as $347,041.83 (Akash), $59,446.34 (Jericho), $503,750.00 (Aditi), and $400,000 (Freeport).

*Accrued Management Fees*

After the referenced loans had been "zeroed out" or reduced, accrued management fees began appearing on financial documents and filed tax returns for both Deerfield One and Deerfield Two. For example, on the 2018 Deerfield One tax return, a $763,878 management fee was listed under "other current liabilities." When the Shahs' counsel asked Sanjay how this amount had been calculated, Sanjay testified, "[p]robably 4 percent of the gross revenue from 2013 to 2018." Sanjay confirmed he had directed Bookkeeper to record this management fee in the financial records. Additionally, Accountant testified Sanjay had said he (Sanjay) was entitled to a management fee "since inception," which Sanjay had not received, and Sanjay "wanted it now reflected on the tax returns."

At trial, Bookkeeper and Sanjay testified Sanjay had accrued over $1.76 million in management fees during the ten-to-eleven-year period after the LLCs had been created in 2013. They had calculated this amount based on gross revenues and sales assessed at a four percent rate, which they claimed was a "standard" and "reasonable" rate in the hotel business. Sanjay explained that he had declared $767,000 as taxable income for which he paid taxes. Bookkeeper provided a similar figure—$776,000—

as taxable income to Sanjay. Accountant maintained the loans were reduced by taxable events to Sanjay for which he had paid taxes.

*Final Judgment*

At the end of the trial, the trial court orally pronounced two pertinent factual findings: (1) Sanjay had breached his fiduciary duty owed to the LLCs when he forged the Management Agreement "that he backdated and used to assess a management fee that he claimed he was owed as a result of his work for the many years he was involved with the company," and (2) the Shahs had "very intimate knowledge" of the hotels' financial records.

The trial court's written final judgment also indicated the Shahs had failed to establish proximate causation between Sanjay's forgery of Umesh's name and the Shahs' claimed damages. In support, the trial court found "[t]he only evidence of damages was the claimed presentation of company related loans — loans which Hiren knew about since the 2014 tax returns." The trial court was persuaded by Bookkeeper's and Accountant's testimonies about how the "loan balances were zero." Additionally, the trial court was unconvinced the Shahs had been unaware of the manner in which the loans had been classified and treated— referencing Hiren's communications with Bookkeeper and Accountant and the "ample evidence" of his approval of such transactions.

This appeal follows. On appeal, the Shahs contend the trial court erred when it found the forged and back-dated Management Agreement had not caused any financial damages to the LLCs.

**Analysis**

"In an appeal from a bench trial, 'the trial judge's findings of fact are clothed with a presumption of correctness on appeal, and these findings will not be disturbed unless the appellant can demonstrate that they are clearly erroneous.'" *Bd. of Trs. of Internal Improvement Tr. Fund of State of Fla. v. Waterfront ICW Props., LLC*, 310 So. 3d 939, 940 (Fla. 4th DCA 2021) (quoting *Lougas v. Sophia Enters. Inc.*, 117 So. 3d 839, 841 (Fla. 4th DCA 2013)). Accordingly, the "appellate court reviews the trial court's findings for competent substantial evidence." *Id.*

*Breach of Fiduciary Duty and Causation*

The Shahs sued Sanjay for breach of his fiduciary duties to Deerfield One and Deerfield Two. To prevail on a claim of a breach of a fiduciary duty, the plaintiff must prove: "(1) the existence of a fiduciary duty; (2)

6

breach of that duty; (3) proximate causation; and (4) damages." *All Purpose Title, LLC v. Knobloch*, 397 So. 3d 85, 88 (Fla. 4th DCA 2024).

We agree with the trial court that Sanjay breached his fiduciary duty when he had forged Umesh's name, and Sanjay does not cross-appeal this finding. But the trial court's breach assessment narrowly focused on the forgery aspect rather than the Management Agreement's subsequent financial impact on the LLCs. Specifically, Sanjay had created and forged the Management Agreement, and then the referenced loans were zeroed out or substantially reduced, and a four percent gross revenue management fee to Sanjay began appearing as a liability on Deerfield One and Deerfield Two tax returns. The Shahs did not agree to this four percent rate, and Hiren testified that the Shahs had never discussed the Management Agreement with Sanjay or Umesh. The Shahs' appeal frames the pertinent issue accordingly: "The main error . . . made by the trial court was to fail to recognize the multiple impacts of the illegal Management Agreement and then compare the financial status of the companies without the Agreement to their financial status, as Sanjay invented it, through the Agreement."

Regarding proximate causation, the trial court found "no substantial, competent evidence of how Sanjay's forgery of Umesh's signature [on the Management Agreement] caused the Deerfield Hotels any injury."[6] Under Florida law, proximate causation focuses on the extent that the defendant's conduct "foreseeably and substantially caused the specific injury that actually occurred." *Lindsey v. Bell S. Telecomms.*, 943 So. 2d 963, 965 (Fla. 4th DCA 2006) (quoting *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 502 (Fla. 1992)). "[H]arm is 'proximate' in a legal sense if prudent human foresight would lead one to expect that similar harm is likely to be substantially caused by the specific act or omission in question." *McCain*, 593 So. 2d at 503.

*Factual Application*

Based on the presented evidence, Sanjay's breach went beyond forging Umesh's name, and we disagree with the trial court's findings that "[t]he Deerfield Hotels never paid Sanjay a management fee under the

---

[6] We acknowledge the Shahs brought their derivative claims under Chapter 605 governing LLCs, which contains specific subsections, such as if a manager's transaction amounts to a conflict of interest. *See* § 605.04092, Fla. Stat. (2021). We decline to address issues that were not fully presented, litigated and adjudicated, as "an appellate court should not make rulings in the first instance." *See DiSorbo v. Am. Van Lines, Inc.*, 354 So. 3d 530, 546 n.4 (Fla. 4th DCA 2023).

Management Agreement" and no "substantial, competent evidence" linked Sanjay's breach to the Shahs' presented quantified damages, including: (1) the zeroing of the Akash, Jericho, and Aditi loans totaling roughly $910,238; (2) the $400,000 reduction of the Freeport loan; and (3) the accrual of both back-dated and future management fees to Sanjay at four percent of gross revenue. Neither finding is supported by competent, substantial evidence.

For several years, Sanjay directed Deerfield One to loan monies to Sanjay's wife Aditi and entities in which Sanjay had maintained a financial interest (Akash, Jericho, and Freeport). Bookkeeper confirmed funds had been disbursed from Deerfield One to Sanjay's wife and these entities, and Sanjay had directed Bookkeeper to record these loans within the LLCs' financial records. These loans appeared as assets on several years' worth of tax returns that Hiren had reviewed. Hiren had known about these loans, but he testified that Sanjay "always said the loans would be repaid back to Deerfield."

By year-end 2019, the general ledger reflected the total for these four loan balances was $2,049,151.65, broken down as $347,041.83 (Akash), $59,446.34 (Jericho), $1,138,913.48 (Freeport), and $503,750.00 (Aditi). These loan balances are listed as assets. Also in 2019, Sanjay forged Umesh's name to the Management Agreement, giving the appearance it had been approved in 2013 when the LLCs were established and from when Sanjay began managing the hotels. The Management Agreement specified the management fee was "an amount equal to four percent (4%) of the Gross Revenue of the hotel . . . ." Until this point, the only management compensation discussed by the Shahs and Sanjay had been $75,000 per year, but no formal agreement at that rate (or any other rate) was memorialized. Additionally, Hiren testified the Shahs had never discussed the Management Agreement with Sanjay or Umesh, with Hiren maintaining he would have objected to a four percent rate.

The year-end ledger for the following year, 2020, indicated a $0.00 balance for the Akash, Jericho, and Aditi loans. These loans collectively totaled around $910,238—the same amount disbursed to Sanjay's wife and the two entities in which Sanjay had financial interest. When specifically asked about the "zeroing" of these loans, Bookkeeper testified Sanjay had directed her to reverse the loans by an "applied management fee." Accountant similarly testified Sanjay had said he (Sanjay) was entitled to a management fee "since inception" and "wanted it now reflected on the tax returns." The filed 2019 tax return indicated "0" for these referenced loans, and subsequent returns omit these loans altogether. While we respect that the trial court is free to find these witnesses credible

about the loan balances, the record problematically indicates Sanjay had directed both witnesses to perform their roles in a manner that gave the forged Management Agreement effect and financially benefitted Sanjay.

Additionally, the tax returns began reflecting a "management fee" as a current liability. When questioned about a specific management fee calculation appearing on a tax return, Sanjay replied "[p]robably 4 percent of the gross revenue from 2013 to 2018." This four percent gross revenue matches the rate specified in the forged Management Agreement, and the 2013 commencement year coincides with the Agreement's June 23, 2013 inception date. Finally, both Sanjay and Bookkeeper testified Sanjay had accrued management fees of at least $1.76 million dating back to the LLCs' creation, and Sanjay had drafted the Management Agreement to be retroactive to the LLCs' creation. These similarities are not mere coincidence, but instead connect Sanjay's breach associated with the Management Agreement to the Shahs' claimed damages.

Based on the foregoing, we conclude the trial court's findings that (1) Sanjay did not receive a "management fee" under the Management Agreement and (2) the "[o]nly evidence of damages was the claimed presentation of company related loans," are not supported by competent, substantial evidence. While the Management Agreement did not directly provide management fee payments to Sanjay "per se," the trial court "missed the mark" by narrowly focusing on Sanjay's forgery of the Management Agreement rather than the Management Agreement's overall negative financial impact on the LLCs.

Here, Sanjay's creation and forgery of the Management Agreement essentially resulted in conversion of a Deerfield One asset (loans) into a liability (accrued management fees) at an unapproved rate, and accrual of fees for Deerfield Two for which no similar Management Agreement (forged or otherwise) existed. We do not see how disbursement of funds to these unaffiliated entities without repayment, or creating this future liability at an unapproved rate in Sanjay's favor, benefitted the LLCs.

The Shahs presented quantified damages attributable to loan elimination and reduction, and accrual of excessive and unapproved management fees. *See Kinchla v. Ran Invs., LLC,* 397 So. 3d 1064, 1067 (Fla. 6th DCA 2024) ("The goal of damages in tort actions is to 'restore the injured party to the position it would have been in had the wrong not been committed.'" (quoting *DFG Grp., LLC v. Heritage Manor of Mem'l Park, Inc.,* 237 So. 3d 419, 421-22 (Fla. 4th DCA 2018))). Thus, Sanjay's breach "foreseeably and substantially caused the specific injury that actually

occurred" to the LLCs and the Shahs. *See Lindsey*, 943 So. 2d at 965. The trial court's determination otherwise was error.

To the extent the trial court found no balance remaining on the Freeport loan, we note the presented evidence reveals a discrepancy. Despite Sanjay's testimony that the Freeport loan had been overstated and the $738,000 debt was satisfied, Bookkeeper testified $1,138,913.48 appeared on the financial records, but she could not recall the reason for the $400,000 reduction. Like the certified public accountant who testified for the Shahs and could not find the $400,000 adjustment, Bookkeeper conceded this reduction adjustment was not included within the admitted financial documents. On remand, the trial court should reassess the LLC's dealings concerning Freeport, including whether a balance remains, when determining damages.

## Conclusion

Because competent, substantial evidence does not support the trial court's determination that Sanjay's forgery and self-dealing did not cause financial damages to the LLCs, this finding is clearly erroneous. The Shahs established Sanjay's creation and forgery of the Management Agreement and unapproved treatment of financial transactions between the LLCs and entities (Freeport, Akash, and Jericho) and Sanjay's wife Aditi proximately caused damages, which the Shahs' financial accountant quantified for the trial court. Thus, we reverse the final judgment entered in Sanjay's favor on the Shahs' breach of fiduciary duty claims, and remand for a damages calculation, including a determination as to the outstanding balance, if any, on the Freeport loan. On remand, the trial court must determine the precise damages amount, offset by any agreed-upon compensation which Sanjay may have earned while managing the two hotels, as well as any non-reimbursed financial contributions made by Sanjay.[7]

*Affirmed in part; reversed and remanded in part with instructions.*

WARNER and GERBER, JJ., concur.

\*          \*          \*

**Not final until disposition of timely filed motion for rehearing.**

---

[7] Sanjay testified he had contributed $308,000 to the LLCs during the Covid-19 pandemic.